IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOSHUA ATTEBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:04-CV-1478-TMP |
| | ) |
| OFFICER DEMKOWICZ, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This cause is before the court on the motion to dismiss filed on August 6, 2004, by the defendants, Officer Demkowicz, Officer Fickland, Officer Smith, Officer McCulley, Officer Henson, Officer Johnson, and Officer Brown. Defendants seek dismissal of all of plaintiff's claims based on insufficiency of the pleadings, statutory immunity, qualified immunity, and absolute immunity. This matter has been fully briefed. The court has considered the pleadings evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

**I. STANDARD OF REVIEW**

When ruling on a motion to dismiss, the court must assume that the factual allegations in the complaint are true. Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Fed. R. Civ. P. 12(b)(6). Furthermore, assuming that the facts alleged are true, a complaint may be dismissed only if it is clear that the plaintiff could not prove any set of facts in support of her claims that would entitle her to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229,

2232, 81 L. Ed. 2d 59 (1984); Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998). Therefore, the court accepts plaintiff's allegations as true and views those allegations in the light most favorable to the plaintiff.

## II.  FACTS AS ALLEGED IN COMPLAINT

Plaintiff Joshua Atteberry brought this action seeking declaratory and injunctive relief, compensatory and punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Alabama state law, contending that the defendants used excessive force in subduing him after a jail altercation.

Atteberry's claims arise from an incident that occurred while Atteberry was being held in the Calhoun County Jail awaiting trial. According to the complaint commencing this action, Atteberry was a pre-trial detainee in the Calhoun County Jail on or about April 8, 2004. Each of the defendants was at that time an employee of the Calhoun County Sheriff's Department, responsible for the care and custody of prisoners at the jail.

On April 8, 2004, Atteberry became involved in an altercation at the jail during which Atteberry struck another prisoner. The defendant officers broke up the altercation, and in the process threw Atteberry to the floor, cutting his lip. The officers then handcuffed and shackled Atteberry and led him back to his cell, where he remained, handcuffed and shackled. About 30 minutes later, the officers moved Atteberry to a different cell where they removed the handcuffs and shackles, then closed and locked the cell door. As the officers left the cell, Atteberry began to argue with Demkowicz, and spat at Demkowicz. The officers then opened the cell door and re-entered.

Demkowicz, Fickland, and Smith began to beat Atteberry, hitting him in the left eye, jaw, back, and other parts of his body.  During the beating, Demkowicz again handcuffed Atteberry and continued to hit him after he was handcuffed.  Henson threw Atteberry's cellmate against the wall and then to the ground.  Meanwhile, Johnson, McCulley, and Brown encouraged Demkowicz, Fickland, and Smith, and refused to assist Atteberry or stop the beating.

The defendants left the cell, leaving Atteberry tightly handcuffed, during which time his hands began to turn blue.  Atteberry was bleeding from cuts over and around his eye.  About 45 minutes later, the officers returned to the cell, cleaned Atteberry's wounds, and provided first aid.  Atteberry requested further medical treatment, which was not made immediately available, but was provided the next day.

### III.  CLAIMS AND DEFENSES ASSERTED

The plaintiff asserts that all of the defendants deprived him of constitutional rights provided by the Fourth, Fifth, Eighth and Fourteenth Amendments, and that they conspired to deprive him of those rights in violation of 42 U.S.C. § 1985.  He further alleges that McCulley, Henson, Johnson, and Brown failed to prevent the wrongful conduct in violation of 42 U.S.C. § 1986.  Finally, he alleges that the defendants committed assault and battery in violation of Alabama state law.

The defendants assert that all of Atteberry's claims are due to be dismissed because the complaint fails to adequately state the claims under the Eleventh Circuit Court of Appeals' "heightened pleading requirement" applicable to § 1983 claims.  The defendants further assert that all of the official-capacity claims are barred by the Eleventh Amendment.  The claims brought

against the officers in their individual capacities, defendants argue, are due to be dismissed because the officers are entitled to qualified immunity on the federal claims and to discretionary-function immunity on the state-law claim.

## IV.  DISCUSSION

### A. § 1983 Claims

#### 1. Adequacy Of the Complaint

The defendants assert that the plaintiff's complaint fails to adequately state a claim pursuant to the Eleventh Circuit Court of Appeals' pleading standard set for § 1983 cases against government officials in their individual capacities.  The plaintiff argues that the heightened pleading standard has been rejected by the Supreme Court and therefore may not be applied, and that, in the alternative, the plaintiff has met even the heightened standard.

The court agrees that the appellate court has adopted and maintains a requirement that a § 1983 complaint against officials who may raise qualified-immunity defenses set forth the facts with "some specificity" so as to allow the court to examine whether a constitutional right was violated, and whether the law was so "clearly established" as to overcome the defense of qualified immunity. See, *e.g.*, GJR Inv. Inc., v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998); Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001)(recognizing that the Supreme Court in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d  517 (1993), rejected the heightened standard in cases that do not implicate qualified immunity).

In this case, the court need not determine whether the Supreme Court has sanctioned or abolished this circuit's standard, because the instant complaint meets even a heightened pleading standard. The plaintiff clearly alleges that on April 8, 2004, the named officers broke up an altercation,[1] handcuffed and shackled him, took him to a separate cell, took off the restraints, and locked him in the cell. After he spat at one officer, they re-entered the cell and beat him, then handcuffed him again and continued to beat him. They then left him tightly cuffed, bleeding, and in pain for 45 minutes.[2] Plaintiff has set forth sufficient facts to describe what conduct is at issue, when it occurred, who carried out the conduct, and in what way it violated plaintiff's constitutional rights. The court finds that the complaint adequately sets forth his claims under § 1983, even applying a heightened standard; accordingly, the motion to dismiss the claims on this ground is without merit and is due to be denied.

### 2. Eleventh Amendment Immunity

The Eleventh Amendment provides immunity to state actors by limiting the federal courts' subject-matter jurisdiction so that a non-consenting state may not be sued in federal court.

---

[1] Although Atteberry also alleges that he was injured by the officers when he was thrown to the floor as the officers broke up the altercation, it does not appear that plaintiff alleges that this injury was the result of excessive force, since plaintiff admits that he was involved in a fight with another inmate and had struck that inmate. In any event, the court finds no basis for such a claim because it is well settled that "immediate coercive measures" may be taken by officers when necessary to provide security or restore order in a prison setting. See, *e.g.*, Ort v. White, 813 F.2d 318, 324-25 (11th Cir. 1987). The plaintiff in this case has not alleged that the officers used more force than necessary to restore order *during* the altercation.

[2] The complaint further alleges that Atteberry was denied further medical care until the next day, but the complaint does not allege any claim based upon the denial of medical treatment and does not allege that the officers were deliberately indifferent to his medical needs.

Consequently, a party wishing to sue the state must do so in that state's courts. See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), cert. denied, 540 U.S. 1107 (2004). This immunity extends not only to the state itself, but also to those acting as an "arm of the state." Id., citing Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429-30, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997). Not only have sheriffs in Alabama been deemed to be "arms of the state," see McMillian v. Monroe County, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997), but so have deputy sheriffs. Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990)(holding that the deputies act as "extensions" of the sheriff and are thereby officers of the state). Accordingly, a suit against a deputy sheriff in his or her official capacity is deemed to be a suit against the state, and all of the plaintiff's claims against the defendants in their official capacities are barred by the Eleventh Amendment. Therefore, the motion is due to be granted as to these claims under § 1983 and 1985(3).

### 3. Qualified Immunity

Plaintiff's claim for use of excessive force arises under 42 U.S.C. § 1983, which provides a right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" when the deprivation is caused by anyone acting under color of law. Id. Essentially, plaintiff asserts that he was unlawfully beaten by jail officers after the altercation on April 8, 2004.[3]

---

[3] As the court already has noted, plaintiff identifies Demkowicz, Fickland, and Smith as the officers who inflicted injury by hitting him after he was taken to a cell, and McCulley, Henson, Johnson, and Brown as the officers who "facilitated" the beating or who failed to intervene to prevent or stop it.

Under federal law, it is well settled that qualified immunity protects government officials performing discretionary functions from civil suit, and from liability, where their conduct does not violate "clearly established statutory or constitutional rights." Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The shield of qualified immunity has been expanded to include acts that may not involve the exercise of "actual discretion," and can include acts that may be ministerial but are "job-related functions" and that are carried out through means that are within the official's authority to utilize. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. May 28, 2004), quoting Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1185 n. 17 (11th Cir. 1994). Furthermore, it is the general rule that qualified immunity will protect government actors from liability, and only in "exceptional cases" will the immunity be unavailable as a shield. Harris v. Board of Education of Atlanta, 105 F.3d 591, 595 (11th Cir. 1997). Even so, qualified immunity does not apply in those instances where the case law establishes a "bright line" in such a "concrete and factually defined context" that it is obvious to all reasonable government actors, in the defendant's place, that the actions violate federal law. Scarbrough v. Myles, 245 F.3d 1299, 1301 (11th Cir. 2001).

The initial burden of demonstrating that the public official was acting within the scope of his position lies with the defendant asserting that defense. Holloman, 370 F.3d at 1265-66. The test is not whether the defendants had the authority to effectuate an illegal act, but whether their jobs entailed engaging in the act in general. See id. In other words, the court does not ask whether defendants had the right to use excessive force against the plaintiff, but simply whether disciplining

or controlling an inmate was within the general scope of the officers' duties. The answer, of course, is in the affirmative.

Once the defendant has met that burden, as defendants in this case have, the burden shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. Id. To prevail against an assertion of qualified immunity, the plaintiff must demonstrate that: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Id. at 1264, citing Wilson v. Layne, 526 U.S. 603, 609, 199 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999).

It is clearly established under federal law (and was so at the time of the acts alleged here) that a pre-trial detainee[4] has a right to be free from conditions or deprivations that are wanton, arbitrary, or intended to punish. Bell v Wolfish, 441 U.S. 520, 536-37, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1978). This right derives from the Due Process Clause of the Fourteenth Amendment; the Eighth

---

[4] Although the defendants assert that plaintiff's claim of excessive force properly arises under the Fourth Amendment, the court finds that the claim is one arising under the Due Process Clause of the Fourteenth Amendment. A Fourth Amendment claim clearly is appropriate when the excessive force was applied in the process of effecting an arrest, but not when the plaintiff's arrest already has been accomplished. See Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998); but see Wright v. Whiddon, 951 F.2d 297, 300 (noting that the question of whether a pretrial detainee may prosecute an excessive-force claim under the Fourth Amendment remains open). In this case, the plaintiff already had been arrested and was jailed awaiting trial. Even if a Fourth Amendment analysis were applied, in which the court must determine whether the degree of force used was "objectively unreasonable," the instant motion to dismiss would be due to be denied for the same reasons set forth *infra*. Id. at 1400 (holding that the test is whether a reasonable officer in the same situation would have believed that the force used was excessive). Analysis under the Fourteenth Amendment is appropriate here, however, because, unlike the plaintiff in Wright, the plaintiff in the instant case was not subjected to the alleged excessive force as a result of officers' efforts to stop plaintiff from fleeing. Such situations are essentially "new" arrests, or seizures of the person. In the instant case, the plaintiff alleges that the force was applied to punish him for fighting, arguing, and/or spitting at the officers.

Amendment prohibition against cruel and unusual punishment is triggered only after an inmate has been convicted.[5]  Graham v. Connors, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Even so, the standard for assessing whether an inmate's constitutional rights have been violated is essentially the same under both the Eighth Amendment and the Due Process Clause.  See, e.g., Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991), cert. denied, 505 U.S. 1208 (1992).  In both instances, the courts must "show great latitude to the discretion of prison officials in inmate management."  Williams, 943 F.2d at 1576, citing Bell v. Wolfish, 441 U.S. at 54; see also Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986).

In the context of an Eighth Amendment claim, an inmate is entitled to be free from the "unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986).  The United States Supreme Court has held that the "core judicial inquiry" in either an Eighth or Fourteenth Amendment context is whether the force applied was the result of a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156, 165-66 (1992).  The court in Hudson recognized the need for prison guards to keep order and maintain discipline through force, and set out factors which should be considered in evaluating whether a use of force was wanton and unnecessary: (1) the need for the application of force; (2) the relationship between the

---

[5]  Accordingly, the plaintiff's claim that his rights under the Eighth Amendment have been violated is without merit and Count II is due to be dismissed.  Similarly, plaintiff's claim that he is entitled to relief under the Fifth Amendment, which applies only to the federal government and not to state or local governments, also is due to be dismissed.  See, e.g., Perry v. Sinderman, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972).  Accordingly, to the extent that Count III states a claim under the Fifth Amendment, it is due to be dismissed, but plaintiff's claim arising under the Fourteenth Amendment will survive the instant motion to dismiss.

need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate.  <u>Hudson</u>, 117 L. Ed. 2d at 166.  Moreover, the Eleventh Circuit Court of Appeals recently has noted that any infliction of excessive force that is "sadistic and malicious" by its very nature precludes application of qualified immunity because it involves the subjective state of mind of the defendant officer.  <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321 (11th Cir. 2002).

The law as explained in <u>Bell</u>, <u>Whitley</u>, and <u>Hudson</u> was clearly stated more than a decade before the conduct at issue in this case.  It must follow, of course, that the law was clearly established in 2004, when the alleged beating occurred.

The version of the facts offered by Atteberry, which the court must assume is true at this stage of the case, establishes that the actions of the officers fall into the category of conduct the court in <u>Hudson</u> deemed "wanton, arbitrary, or intended to punish."  Accepting the plaintiff's alleged facts as true, as the court must  at this juncture, it is clear that the officers inflicted injury upon Atteberry after the altercation with the other inmate ended, after any threat to inmates or jail officials had passed, and with no purpose of restoring order or maintaining discipline.  If Atteberry's allegations are proven true – that officers repeatedly struck him while he was subdued and handcuffed, and that the beating began only after he had been removed from the altercation and locked in a cell – then a reasonable and logical conclusion is that the officers acted maliciously or sadistically, motivated by a desire to punish or inflict harm and not by a desire to maintain order.  While the defendants certainly may disagree with Atteberry's description of the events, the facts and circumstances alleged in the complaint reveal that the defendants maliciously inflicted harm on him.  Well-established

federal law gave any reasonable officer "fair warning" that inflicting injury on an inmate who was posing no threat and who already was subdued is illegal. Under Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002), qualified immunity is not available. Accordingly, the defense of qualified immunity does not protect these defendants in their official capacities, and the motion to dismiss the § 1983 claim for excessive force against the defendants in their individual capacities on this ground is due to be denied.

**B. State-Law Claim**

Plaintiff also asserts that the defendants committed an assault and battery in violation of Alabama law. The defendants assert that they are absolutely immune from liability under Article I, § 14 of the Alabama Constitution. It is clear that the immunity provided by the state constitution shields the officers in their official capacities, but they argue that the section also immunizes them from being sued in their individual capacities.

In the brief supporting the instant motion, defendants cite a litany of cases for the proposition that the immunity applies to both official- and individual-capacity claims. Although an independent review of Alabama case law could persuade this court that defendants' assertion of immunity is unavailing, see Phillips v. Thomas, 555 So. 2d 81, 82 (Ala. 1989)(holding that state officers are not protected by the sovereign immunity when they act willfully, maliciously, illegally, fraudulently, in bad faith, beyond authority, or under a mistaken interpretation of the law), the Eleventh Circuit Court of Appeals has interpreted the state cases differently. In McMillian v. Johnson, the appellate court held that Alabama law provides a bar to such suits against a sheriff in his individual capacity.

McMillian v. Johnson, 101 F.3d 1363, 1365 (11th Cir. 1996)(admitting that the language used was "confusing" in Tinney v. Shores, 77 F.3d 378 (11th Cir. 1996), but that Tinney mandated that sovereign immunity apply to shield sheriffs from suit when sued in their individual capacities). Furthermore, deputy sheriffs are immune from suit to the same extent as sheriffs. See, *e.g.*, Alexander v. Hatfield, 652 So. 2d 1142 (Ala. 1994). Accordingly, binding precedent requires that the motion to dismiss the state-law claim against the defendants in both their official and individual capacities on the basis of § 14 be granted.

### C.  § 1985, 1986 Claims

Atteberry alleges in Count IV of the complaint that the defendants "agreed, conspired, and confederated" in violation of 42 U.S.C. § 1985 to deprive him of his rights under the Fourth and Fourteenth Amendments. In Count V, Atteberry further alleges that McCulley, Henson, Johnson, and Brown failed to prevent the alleged beating in violation of 42 U.S.C. § 1986. Defendants assert that the § 1985 conspiracy claim is due to be dismissed because plaintiff does not sufficiently allege facts that would state a claim for such a conspiracy and because they are not liable under the intracorporate-conspiracy doctrine. Defendants further assert that the § 1986 claim is derivative of § 1985, and therefore also is due to be dismissed.

In responding to the motion to dismiss, plaintiff discusses the intracorporate-conspiracy doctrine, and properly questions its application to the individual officers sued here. Plaintiff does not, however, address defendants' assertion that the complaint fails to sufficiently allege facts of a conspiracy. Although these defendants argue simply that the plaintiff has failed to allege specific

facts that would support a claim of collusion, the court also notes that the § 1985 claim is unfounded because the plaintiff has not alleged any fact that would demonstrate that he is protected under § 1985(3),[6] which provides a cause of action for a conspiracy only to those persons asserting that they have been deprived equal protection of the laws, and who are members of a protected class. See, *e.g.*, Farese v. Scherer, 342 F.3d 1223, n. 7 (11th Cir. 2003)(holding that the district court properly dismissed the § 1985(3) claim because "prisoners are neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3)"). Plaintiff does not allege that the excessive force was used on him because of any racial or class-based "invidiously discriminatory animus," as is required under § 1985(3).

---

[6] The plaintiff does not specify under which subsection of § 1985 his claim arises, but the court notes that § 1985(1) applies only in situations where the conspiracy involves preventing an officer of the United States from performing his or her duties, and § 1985(2) applies only in instances of obstructing justice by intimidating a party, witness, or juror, neither of which seems to cover the facts alleged here. The court has presumed, therefore, that plaintiff is grounding his claim on § 1985(3). Section 1985(3) states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, **any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws**; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3)(emphasis added).

Griffin v. Breckenridge, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971).  In that sense, the defendants correctly assert that the complaint fails to state facts sufficient to make out the claim.  Accordingly, plaintiff's conspiracy claim is due to be dismissed because the complaint fails to allege sufficient facts to support a finding that the beating was racially or invidiously motivated and, thus, plaintiff has no standing to bring a claim under § 1985(3).  Because the plaintiff has failed to state a claim under § 1985(3), the court need not examine whether the intracorporate- conspiracy doctrine applies.

Defendants further assert that the claim arising under 42 U.S.C. § 1986 is derivative of a claim under § 1985, and thus is due to be dismissed.  The Eleventh Circuit Court of Appeals has held that § 1986 claims are derivative of § 1985 claims, and that dismissal of the § 1985 claims precludes plaintiff from maintaining a claim under § 1986.  Park v. City of Atlanta, 120 F.3d 1157, 1159-60 (1997).  Accordingly, the claim set forth in Count V also is due to be dismissed.

**D.  Punitive Damages**

The defendants seek dismissal of plaintiff's claims for punitive damages on the basis that the claims are "against the state as the defendants are state officials."  Brief in Support of Motion to Dismiss, pp. 12-13.  Defendants rely upon City of Newport v. Fact Concerts, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), which stands for the proposition that a municipality may not be held liable for punitive damages in a § 1983 action.  The instant case, involving claims against sheriff's deputies in their individual capacities, however, does not involve a municipality, and defendants have failed to demonstrate that this is a case that lies "in effect" against the State of

Alabama. Punitive damages may properly be awarded against state actors in their individual capacities who commit constitutional violations. See, *e.g.*, Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Accordingly, the motion to dismiss plaintiff's prayer for punitive damages is due to be denied.

### E. Injunctive Relief

The defendants assert that the plaintiff's claims for injunctive relief are moot because plaintiff no longer is incarcerated in the Calhoun County Jail. In his response to the motion to dismiss, plaintiff does not assert that he is entitled to injunctive relief. The complaint simply seeks to enjoin the defendants from inflicting any "further punishment" upon plaintiff. Because plaintiff no longer is incarcerated and therefore is no longer subject to any "further punishment," the motion to dismiss plaintiff's claim for injunctive relief as moot is due to be granted. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); Tucker v. Phyfer, 819 F.2d 1030 (11th Cir. 1987).

### IV. CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by the defendants is due to be granted in part and denied in part. The motion is due to be granted as to all claims, both federal and state, against all defendants in their official capacities. Further, all state-law claims against all defendants in both their official and individual capacities are due to be dismissed. Moreover, the motion is due to be granted with respect

15

to plaintiff's §§ 1985 and 1986 claims against the defendants in their individual capacities. Plaintiff's request for injunctive relief also will be dismissed as moot.

The motion to dismiss is due to be denied, however, with respect to the plaintiff's § 1983 claim for excessive force against all defendants in their individual capacities, the court finding that qualified immunity does not shield their conduct as alleged in the complaint.  Likewise, the motion will be denied as to plaintiff's request for punitive damages.

A separate order will be entered in accordance with this opinion.

DATED this 18th day of February, 2005.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE