IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

JOSHUA ATTEBERRY,                           )
                                            )
              Plaintiff,                    )
                                            )
v.                                          )          Case No. 1:04-CV-1478-TMP
                                            )
OFFICER DEMKOWICZ, *et al.*,                )
                                            )
              Defendants.                   )

## MEMORANDUM OPINION

This cause is before the court on the motion for summary judgment filed on December 5, 2005, by the defendants, Officer Demkowicz, Officer Fickland, Officer Smith, Officer McCulley,[1] Officer Henson, Officer Johnson, and Officer Brown.  Defendants seek dismissal of all of plaintiff's claims on grounds that there is no genuine issue of material fact as to whether defendant violated plaintiff's constitutional rights.  This matter has been fully briefed.  The court has considered the pleadings evidence and the arguments set forth by both parties.   The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] The complaint and court records, as well as defendants' motion, identifies this officer as Joseph McCulley, but the deposition indicates that his last name is McCauley.

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

2

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need

3

not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


## FACTS FOR SUMMARY JUDGMENT PURPOSES

Applying the standards stated above, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.  Plaintiff Joshua Atteberry's claims arise from an incident that occurred while Atteberry was being held in the Calhoun County Jail awaiting trial.  According to the evidence submitted in support of and in opposition to the instant motion, the following facts are accepted as true for purposes of summary adjudication.

Atteberry was a pre-trial detainee in the Calhoun County Jail on or about April 8, 2004.  He was housed in a section of the jail known as the tan pod.  Each of the defendants was at that time an employee of the Calhoun County Sheriff's Department, responsible for the care and custody of prisoners at the jail.  On April 8, 2004, Atteberry became involved in an altercation during which Atteberry struck another inmate, Luke Jones.  In response to an "all-rovers" call, about six officers went to the tan pod to stop the incident.  The officers instructed Jones to return to his cell, which he did.  Demkowicz instructed Atteberry to return to his cell, but Atteberry refused.  Demkowicz ordered Atteberry to go to his cell several times, but Atteberry continued to defy the orders.  Demkowicz told Atteberry that if he did not go to his cell, the officers would have to take him.  Atteberry put his finger in Demkowicz's face and said that he would not go to his cell.  Demkowicz and Smith each put a hand on Atteberry's shoulders and took Atteberry to the floor.  Johnson came in and helped restrain Atteberry, and the officers handcuffed Atteberry.  During the scuffle to get

Atteberry to the floor, Atteberry hit the concrete floor and cut his mouth.  The officers escorted Atteberry to his cell in the tan pod.  As they led him to the cell, Atteberry was screaming, making threats, and pushing the officers.  He struggled against the officers on the way up the stairs, and the officers had to push Atteberry against the wall to prevent them all from falling down the stairs.  Atteberry was angry.  He kicked a stool, pushed the officers, and resisted going into his cell.  The officers got Atteberry into the cell, and closed and locked the door.

After the cell door was closed, Atteberry spit blood onto Demkowicz's face and mouth.  Demkowicz left to go to the jail medical office to sterilize himself.[2]  About 10 or 15 minutes later, the six defendants returned to Atteberry's cell in the tan pod.  Demkowicz told Atteberry that he was going to be moved to the segregation section of the jail, known as the pink section.  The officers took Atteberry to a cell in the pink section, where maximum security inmates are kept.  The officers placed Atteberry in a cell in the pink section with another inmate, Ellis Mashburn. They removed Atteberry's handcuffs, then closed and locked the cell door.  Atteberry was angry, and in response to his shouts, other inmates became "riled up" as well, kicking their doors and screaming.  Some inmates threw water bottles and other items under their doors.  The officers left the cell and closed the cell door.  Atteberry again spat at Demkowicz through the grate in the cell door.

Brown told Atteberry, "You fucked up now."  The officers then re-opened the cell door and re-entered Atteberry's cell.  Demkowicz rushed past Mashburn toward Atteberry, and hit Atteberry

---

[2]       There is no allegation that any of the actions of any officers up to the time Demkowicz left the cell in the tan pod were in any way violative of Atteberry's rights.

5

in the left eye.[3]  Fickland and Smith handcuffed Atteberry.  Fickland, Smith, and Demkowicz continued to hit Atteberry, throwing at least a dozen punches.  Henson threw Mashburn against the wall and then to the ground.  Meanwhile, Johnson, McCulley, and Henson prevented Mashburn from interfering and failed or refused to assist Atteberry or stop the beating.

## DISCUSSION

Essentially, plaintiff asserts that he was unlawfully beaten by jail officers, who intended to punish him for spitting at them and arguing with them after the altercation on April 8, 2004.[4]  It is clearly established under federal law that a pre-trial detainee[5] has a constitutional right to be free from conditions or deprivations that are wanton, arbitrary, or intended to punish.  Bell v Wolfish, 441 U.S. 520, 536-37, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1978).  The standard for assessing whether an inmate's constitutional rights have been violated is essentially the same under both the Eighth

---

[3]    Demkowicz contends that Atteberry threw the first punch, and that Demkowicz acted in self defense.  That fact, however, is disputed and must be resolved in favor of the plaintiff at this juncture.

[4]    As the court already has noted, plaintiff identifies Demkowicz, Fickland, and Smith as the officers who inflicted injury by hitting him after he was taken to a cell, and McCulley, Henson, Johnson, and Brown as the officers who "facilitated" the beating by standing by and not intervening to stop it.

[5]    Although the defendants assert that plaintiff's claim of excessive force properly arises under the Fourth Amendment, the court found in its memorandum opinion resolving the motions to dismiss filed in this case that Atteberry's claims arise under the Due Process Clause of the Fourteenth Amendment.  This is because the Fourth Amendment deals with the use of force in making the seizure of an arrest.  Once the arrest is effected, the Fourth Amendment fades from the analysis is favor of the Eighth and Fourteenth Amendments.  In this case, the force was used in the jail, long after Atteberry's arrest was made.  See Hicks v. Moore, 422 F.3d 1246, 1254 note 7 (11th Cir. 2005).

6

Amendment and the Due Process Clause of the Fourteenth Amendment.  See, e.g., Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991), cert. denied, 505 U.S. 1208 (1992).  In both instances, the courts must "show great latitude to the discretion of prison officials in inmate management." Williams, 943 F.2d at 1576, citing Bell v. Wolfish, 441 U.S. at 54; see also Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986).

In the context of an Eighth Amendment claim, an inmate is entitled to be free from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986).  The United States Supreme Court has held that the "core judicial inquiry" in either an Eighth or Fourteenth Amendment context is whether the force applied was the result of a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156, 165-66 (1992).  The court in Hudson recognized the need for prison guards to keep order and maintain discipline through force, and set out factors which should be considered in evaluating whether a use of force was wanton and unnecessary: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate.  Hudson, 117 L. Ed. 2d at 166.

The version of the facts offered by Atteberry and supported by evidence in the form of depositions of Atteberry and Mashburn  present a genuine issue of material fact as to whether the actions of the officers fall into the category of conduct the court in Hudson deemed "wanton, arbitrary, or intended to punish." Viewing the facts in the light most favorable to the plaintiff, as the

7

court must at this juncture, the officers inflicted injury upon Atteberry after he was locked in a cell, and again after he was handcuffed and subdued.  Accordingly, the evidence supports a finding that there was not, at that time, any need for the application of force, and that the force was used after any threat to inmates or jail officials had passed, and with no purpose of restoring order or maintaining discipline.

Atteberry has produced evidence, disputed by defendants, that Demkowicz threw the first punch.  While the evidence supports the need for some use of force earlier, as Atteberry admits he was argumentative and combative when he was moved into the pink section cell, it appears that any threat to the officers had subsided once Atteberry was locked in the cell.  If plaintiff's evidence is believed — that officers re-entered his locked cell in retaliation for being spat upon, and that they repeatedly struck him after he was subdued and handcuffed — then a reasonable juror could conclude that the officers acted maliciously or sadistically, motivated by a desire to punish or inflict harm, and not by a desire to maintain order.[6]  The defendants have failed to show the absence of a genuine issue of material fact as to the motivation for the injuries inflicted upon Atteberry.  Accordingly, the motion for summary judgment is due to be denied.

---

[6]  The defendants have offered evidence that they re-entered the pink cell because they had decided to move Atteberry to yet another area of the jail to restore order.  Reasonable jurors could thus conclude that the officers' motives were not to punish or harm, but simply to maintain order.  The disputed evidence, however, creates a question of fact for a jury.  But even if that can explain why officers re-entered plaintiff's cell, it does not explain his assertion that they continued to beat him *after* he was handcuffed and subdued.

## CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by the defendants is due to be denied.   A separate order will be entered in accordance with the findings set forth herein.

DATED this 2nd  day of March, 2006.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE